**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Crim. No.: 20-PX-0229** |
| **JOSE ORDONEZ-ZOMETA** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MOTION IN LIMINE TO PRECLUDE TESTIMONY FROM PAOLA KARINA CRUZ IGLESIAS REGARDING "FELON" AND THE LAUNDRY ROOM TELEPHONE CALL PURSUANT TO *BRUTON*, *TRUSLOW*, and FRE 403, 602, and 901(b)(5)

The Government intends to call Paola Karina Cruz Iglesias as part of their case in chief. Ms. Cruz Iglesias made several statements in an interview with the Fairfax Police Department which implicate Mr. Ordonez-Zometa, despite Ms. Cruz Iglesias having never met or spoken with Mr. Ordonez-Zometa. The Government should be precluded from eliciting any testimony regarding statements "Lester" made to Ms. Cruz Iglesias regarding "Felon" because of issues raised by *Bruton, Truslow*, and Federal Rule of Evidence 403. The Government should be precluded from eliciting any testimony which would suggest that "Felon" or "the boss" made certain statements on a telephone call pursuant to Federal Rules of Evidence 403, 602, and 901(b)(5).

### SUMMARY OF POTENTIAL TESTIMONY

Mr. Ordonez-Zometa finds the following potential testimony of Ms. Cruz Iglesias particularly troubling. In her interview with Fairfax Police[1], Ms. Cruz Iglesias stated "[Lester] said, I'm in the *mara* and I just looked at him. Then he said, I'm the boss in *Annandale*. Of course I'm not the only one, I receive orders. And that's when he told me, the one who gives me

---

[1] Filed as Exhibit 1 is a transcript of the interview of Ms. Cruz Iglesias with Fairfax PoliceIn order to present the Court with the totality of the interview, while at the same time recognizing concerns regarding witness safety, the transcript of the interview is being filed under seal.

orders is Felon. That's when I learned what they call the boss." Ex. 1 at 18. When talking about

Jacson Pineda-Chicas and Cristhian Martinez-Ramirez she stated: "So I told him [Lester], and

you activated them, no he said they activated themselves with papa he said, with Felon or [u/i]

but they're children I said to him like that … The only thing Felon ordered was to school them to

teach them how things were." Ex. 1 at 29.

      Ms. Cruz Iglesias also told the police about a phone call she claims to have overheard

which took place in the laundry room of her apartment building with Cristhian Martinez-Ramirez

and Jacson Pineda-Chicas. Ex. 1 at 32. Jacson and Cristhian allegedly came to her apartment and

then went to the laundry room for the conversation and she joined them. *Id.* Ms. Cruz Iglesias

told police this phone call happened on Monday. Ex. 1 at 31. Ms. Cruz Iglesias states that she

recognized Lester, Kevin, Jonathan, and someone known to her as "Beaver," who Cristhian

called boss, on the telephone call. Ex. 1 at 33. Ms. Cruz Iglesias stated:

> So the strange thing was when the boss told Jackson, what's up Smokey he said,
> do you have what I asked you for, I stayed, what I asked you for, and he said,
> what do you want for me to prove to you that I was in jail in *Maryland*. O.K. I
> understand Jackson was detained in *Maryland* I don't know. That's what he said I
> don't know, so he said to him, I don't believe you were locked up dog, the boss
> said to him. And what do you want he said, bring me the papers you were given
> there, show me you were locked up. Well Jackson told him he didn't have any
> way to get them, because how ould he go to his house if he was fighting with his
> mom. And he answered him very angry, look I'm gonna tell you something, if
> you don't bring me those papers, I'm gonna kill you he said to him, you decide.
> Not even the dog he told him, Jackson meaning no. Then and he said to him.
> …
> **I'll kill you he said to him**, I don't know if he was serious , I don't know if he
> was saying it to
> …
> To make him mad. Then he told him, you know what, either you go to your house
> for those papers, or I'll go and **I'm gonna fuck your family, your brothers, and
> I'll go in your house to mess it up looking for them, you decide he said to
> him. Either you go or I'll go. So I was like, he's gonna kill him for some
> papers.** Then Jackson said to him, no, no dog I'll go to get the papers. O.K. he
> said, the meeting will be c.., called off, you all are not gonna come here to my pad
> on Wednesday, you all are gonna come on Friday. I'll give you time. Supposedly

the meeting they had that day in the afternoon was called off til Friday. After that he told Christian, and you too have to get it. And Christian said to him, the problem is I escaped from the foster home he said. And I left my clothes there and everything, so the boss said to him, no then it's O.K. but I expect the papers from you Smok[ey]. Then he told all of them, the big *mara*, telling them to yell *mara* whatever, the *locos* have control and whatever. So they all started to yell and laughing then they cut the call.

Ex. 1 at 36 – 38 (bold added). Notably, Ms. Iglesias Cruz gave no indication how she knew "the boss" was speaking.

## ARGUMENT

I.    **Any testimony which regards what Mr. Hernandez-Garcia told the witness about "Felon" is inadmissible due to concerns raised by *Bruton,* and in the alternative, by *Truslow* and Federal Rule of Evidence 403.**

The testimony of a non-testifying codefendant's out-of-court statement which inculpates a defendant by name violates a defendant's right to conform the witnesses against him. *Bruton v. United States*, 391 U.S. 123 (1968). Where "powerfully incriminating extrajudicial statements of a codefendant… are deliberately spread before the jury in a joint trial … we cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination." *Id.* at 135–37. If the statement "incriminates only by virtue of linkage to other evidence at trial – that is, if it incriminates 'inferential[ly] rather than "facially" – then it does not implicate *Bruton. Id.* at 208-09. A statement can be facially incriminating "there the inferences required to link the statement to the defendant are the type "that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Gray v. Maryland*, 523 U.S. 185, 196 (1988).

The Fourth Circuit has held that *Bruton* does not apply unless the statements are testimonial and that statements made to a friend in an informal setting are not testimonial. *See United States v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013), *United States v. Alvarado*, 816 F.3d

242, 252 (4th Cir. 2016). Mr. Ordonez-Zometa submits that those cases were wrongly decided. In *United States v. Williams*, Crim. No. JCC-09-414, 2010 U.S. Dist. LEXIS 100867 (E.D. Va. Sept. 23, 2010), Judge Cacheris of the Eastern District of Virginia opined that the problem with extending *Crawford* to *Bruton* is that the *Crawford* Court explicitly declined to limit the Confrontation Clause to testimonial statements. *Id.* at 7. (citing *Crawford v. Washington,* 541 U.S. 36, 60-61 (2004)) Judge Cacheris opined that to view *Bruton* through the lens of *Crawford* would be to say that there is no longer a *Bruton* rule. *Williams*, 2010 U.S. Dist. LEXIS 100867 at *8. Judge Cacheris argued that even following *Crawford,* the Fourth Circuit's ruling in *United States v. Truslow*, 530 F.2d 257, (4th Cir. 1975) remained good law. *Id.* at *9. In *Truslow*, two defendants, Truslow and Brumfield, were jointly tried. Multiple witnesses testified that one of the defendants made a statement to them which incriminated both himself and the other. Both defendants took the stand, which removed any confrontation problems as to their declarations. *Id.* at 262. However, the Fourth Circuit found that "their testifying did not cure the initial and continuing prejudice created by the use of the many highly damaging and incriminating statements." *Id.* Judge Cacheris thus found that statements may implicate *Bruton*, even if they are not testimonial under *Crawford*. *Williams*, 2010 U.S. Dist. LEXIS 100867 at *14. *See also* Colin Miller, *Avoiding A Confrontation? How Courts Have Erred in Finding that Nontestimonial Hearsay is Beyond the Scope of the Bruton Doctrin*e, 77 Brook. L. Rev. 625, 661 (2012) (discussing *Bruton* in the wake of *Crawford*, suggesting that nontestimonial codefendant confessions should still be precluded, and that certain nontestimonial codefendant statements violate Federal Rule of Evidence 403 and are therefore inadmissible).

Thus, while counsel submits the statements are inadmissible under *Bruton* as they were made by Mr. Hernandez-Garcia and Mr. Ordonez-Zometa will not have the opportunity to cross-

4

examine Mr. Hernandez-Garcia, counsel alternatively argues that the probative value of the statement is substantially outweighed by unfair prejudice and a confusion of the issues under Federal Rule of Evidence 403. While the Government has proffered that the testimony regarding "Felon" being Mr. Hernandez-Garcia's boss and ordering him to do things is not being offered for the truth of the matter, but rather for Mr. Hernandez-Garcia's state of mind on the night of the murder in this case, it is unlikely that the jury will be able to make such a distinction.  There is a high risk of unfair prejudice to Mr. Ordonez-Zometa if the jury takes the statements made by Mr. Hernandez-Garcia to Ms. Cruz Iglesias as a fact.

**II.      Any testimony which ties Mr. Ordonez-Zometa to the alleged phone call Ms. Cruz Iglesias overheard must be suppressed pursuant to FRE 602, 901(b)(5), and 403.**

Federal Rule of Evidence 602 provides that a witness may "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." In regards to authenticating evidence, Federal Rule of Evidence 901(b)(5) provides that "[a]n opinion identifying a person's voice – whether heard firsthand or through mechanical or electronic transmission or recording – based on hearing the voice at any time under circumstances that connect it with the alleged speaker" can suffice to authenticate that evidence. Finally, Federal Rule of Evidence 403 states that the court may exclude evidence if the probative value is substantially outweighed by the danger of unfair prejudice.

The Government has no one to corroborate Ms. Iglesias Cruz's testimony that she heard this conversation or that she knew that "the boss" was speaking. There is nothing to suggest that "the boss" identified himself on the phone call, nor is there anything to suggest that someone else told her who was speaking. Ms. Igelsias Cruz never met Mr. Ordonez-Zometa. Further, Cristhian Martinez-Ramirez, who Ms. Iglesias Cruz says was present for the telephone call, testified in this

Court on Friday, December 9, 2022. He first testified that he had no phone conversations with "Felon," and that they only spoke through text messages or WhatsApp messages. He later testified that he spoke with "Felon" on the phone no more than three times and that he did not recall speaking with "Felon" in the week leading up to them going to "Felon's" home. Cristhian further testified that the reason the meeting happened on Friday was because the group did not have the money for an Uber. There is nothing to suggest Ms. Iglesias Cruz has any basis of knowledge to suggest that the voice on the phone was "the boss," "Felon," or Mr. Ordonez-Zometa.

The alleged statements, that "the boss" threatened was going to go to the victim's family's home and that "the boss" was going to kill the victim over some papers are highly prejudicial. Any suggestion that Mr. Ordonez-Zometa was the voice on the phone call when Ms. Cruz Iglesias has no basis of knowledge as to who was on the phone call is unfairly prejudicial and must be excluded.

## CONCLUSION

For the foregoing conclusions, the Government should be precluded from eliciting testimony from Ms. Cruz Iglesias regarding what Mr. Hernandez-Garcia said about "Felon," and from eliciting testimony which may suggest that Mr. Ordonez-Zometa was the voice on a highly prejudicial telephone call.

_____/s/_____
Jennifer E. Smith (Bar No. 20767)
The Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21201
Office: (410) 444-1500
Fax:  (443) 836-9162
Email: jennsmith0890@gmail.com

_____/s/_____
Christopher Nieto
Law Office of Christopher Nieto, LLC
1 North Charles Street, Suite 1301
Baltimore, Maryland 21201
Office: (443) 863-8189
Fax:  (443) 378-5723
Email: cnieto@nietolawoffice.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 10th day of December 2022, a true and correct copy of the

foregoing  was served on all parties via ECF.

_____/s/_____
JENNIFER SMITH